## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | |
|---|---|
| GEORGE WEST, INDIVIDUALLY, AND ON BEHALF OF CLASSES OF SIMILARLY SITUATED PERSONS; WESTMED DISPOSAL, INC., INDIVIDUALLY, AND ON BEHALF OF CLASSES OF SIMILARLY SITUATED PERSONS, ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) | Civil Action No.: _____ |
| ) ) | |
| v. ) ) | |
| INTEL CORPORATION, ) ) | |
| Defendant. ) | |

### INDIVIDUAL AND CLASS ACTION COMPLAINT
### AND DEMAND FOR JURY TRIAL

### I.    INTRODUCTION

1.     Intel Corporation ("Intel") is the top-selling semiconductor company in the world and manufactures central processing units ("CPUs") utilized by the most popular personal computers ("PCs"), servers, and electronic devices sold on the market.

2.     Much of Intel's success is attributable to producing some of the fastest operating CPUs available.  On its products' packaging, Intel advertises the speed and high performance offered by its CPUs.

3.     But to achieve high speed and performance, Intel took shortcuts with its CPUs, which left vulnerabilities open to hackers and malicious software. These vulnerabilities exposed Intel customers to critical security threats and placed customers' sensitive, private, and otherwise secure information in jeopardy. The exposure to these vulnerabilities is so far-reaching that it affects every PC containing an Intel processor manufactured since 1995.

4. The computer industry labels these security flaws as "Meltdown" and "Spectre," which take advantage of the CPU process called speculative execution. Because the security flaws cannot be fixed at the hardware level, operating system designers, such as Apple and Microsoft, are forced to develop software patches to close the exposure. These software patches, however, degrade CPU performance as much as 30%. Thus, PC owners with an Intel CPU are left with the unappealing choice of (a) purchasing a new CPU or PC containing a non-defective CPU; (b) continuing to use a vulnerable PC without up-to-date software, or (c) continuing to use a PC with updated software but degraded performance.

5. PCs that do not utilize Intel processors are not affected by Meltdown. Likewise, PCs that do not use Intel processors are not susceptible to—or are substantially less susceptible to—Spectre. Thus, Intel's representations that its CPUs are some of the fastest available on the market are demonstrably false because the very feature that gave the CPUs their speed caused serious security vulnerabilities that must be fixed—thereby actually degrading performance.

## II.   PARTIES

**A.   Plaintiffs**

6. George West is a citizen and resident of the State of Alabama and purchased a PC containing an Intel processor in 2017. Mr. West used his PC primarily for personal use. Prior to his purchase, Mr. West was unaware of the security defect described herein. Had Intel disclosed that its CPU had a critical security flaw that would need to be patched, and thus substantially slow his PC, Mr. West would not have purchased the PC with an Intel processor or would have paid substantially less for it.

7. WestMed Disposal, Inc. ("WestMed") is a business incorporated and existing under the laws of the State of Alabama, with its principal place of business in Woodstock, Alabama. WestMed purchased five PCs containing Intel processors in 2017. WestMed utilized the PCs for

business purposes and was unaware of the security defect described herein when it purchased the PCs. Had Intel disclosed that its CPU had a critical security flaw that would need to be patched, and thus substantially slow the PCs, WestMed would not have purchased the PCs with an Intel processor or would have paid substantially less for them.

**B.    Defendant**

8.     Intel Corporation is a business incorporated and existing under the laws of the State of Delaware, with its principal place of business in Santa Clara, California. Intel is, and at all relevant times was, engaged in the business of designing, manufacturing, distributing, and selling computer products, including processors and the defective CPUs that are at issue in this Complaint.

### III.    JURISDICTION AND VENUE

9.     This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and there is minimal diversity because named Plaintiffs and certain Members of the Classes are citizens of a different state than Defendant, as required by 28 U.S.C. § 1332(d)(2).

10.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

### IV.    STATEMENT OF FACTS

11.    Microprocessors, also known as central processing units or CPUs, are small chips that reside in PCs and other electronic devices. The CPU processes information stored in the computer and executes system instructions, such as making mathematical calculations, processing mouse and keyboard inputs, and running applications.

12.     While performing its functions, the CPU must access and interact with the computer's memory. Memory contains items such as program content, operating system data, and user data.

13.     CPUs operate faster than memory, making the process of retrieving items from memory relatively slow. To expedite this process, Intel CPUs "cache" a small amount of temporary memory for quicker access. Using the memory cache, Intel CPUs implement a process known as speculative execution, where the CPU will "guess" the instruction it will receive from memory to get a head-start at execution. If the CPU guesses correctly, then the next set of instructions are ready with no delay. If it guesses incorrectly, the CPU simply discards the result into the cache and executes the correct instructions instead.

14.     The problem with Intel's speculative execution process is that it fails to assess whether the memory accessed from the cache is privileged—i.e., inaccessible. Instead, Intel CPUs begin running the speculative instructions without a privilege check until the time comes to decide whether the speculative execution should be continued. During this window of time, hackers and malicious software can manipulate this vulnerability in Intel's speculative execution process to access parts of the computer's high-privilege memory, including sensitive, private, and otherwise secure information. Indeed, online resources have demonstrated that Meltdown could allow hackers to steal passwords in real time.[1]

---

[1] Cade Metz and Nicole Perlroth, *Researchers Discover Two Major Flaws in the World's Computers*, N.Y. TIMES (Jan. 3, 2018), *available at* https://www.nytimes.com/2018/01/03/business/computer-flaws.html (last visited Feb. 6, 2018).

15. To fix the vulnerability, PC operating systems must be "patched" with software updates. The software patches, however, result in a substantial degradation of computer performance, estimated by some to be up to 30%.[2]

16. Rather than inform consumers about the critical security flaws in its CPUs, Intel continued to sell CPUs at a price much higher than consumers would have paid had they known about the flaws. Further, Intel continued to tout the performance of its CPUs, even though the CPUs achieved high performance through the very design flaw that ultimately *degrades* the CPUs' performance due to necessary software updates.

17. Worse still, rather than inform consumers about the critical security flaw, Intel's Chief Executive Officer Brian Krzanich sold the maximum Intel stock permitted under corporate bylaws after learning of the flaw, retaining only the minimum allowed under Intel's ownership requirements.[3] As a result, Krzanich received over $39 million before the flaw became public.[4]

18. Had Plaintiffs and other consumers and businesses known of the security flaw, or the software patches necessary to protect their sensitive, private, and otherwise secure data, they would not have bought Intel CPUs, or would have paid substantially less for them.

---

[2] John Leyden and Chris Williams, *Kernel-memory-leaking Intel processor design flaw forces Linux, Windows redesign*, THE REGISTER (Jan. 2, 2018), *available at* https://www.theregister.co.uk/2018/01/02/intel_cpu_design_flaw (last visited Feb. 6, 2018).

[3] Alicia Ritcey, *Intel CEO's Stock Sales May Warrant SEC Examination,* BLOOMBERG TECHNOLOGY (Jan. 8, 2018), *available at* https://www.bloomberg.com/news/articles/2018-01-08/intel-ceo-krzanich-s-stock-sales-seen-warranting-sec-examination (last visited Feb. 6, 2018); Sean Gallagher, *Intel CEO sold all the stock he could after Intel learned of security bug,* ARSTECHNICA (Jan. 4, 2017), *available at* https://arstechnica.com/information-technology/2018/01/intel-ceos-sale-of-stock-just-before-security-bug-reveal-raises-questions (last visited Feb. 6, 2018).

[4] Sean Gallagher, *Intel CEO sold all the stock he could after Intel learned of security bug,* ARSTECHNICA (Jan. 4, 2017), *available at* https://arstechnica.com/information-technology/2018/01/intel-ceos-sale-of-stock-just-before-security-bug-reveal-raises-questions (last visited Feb. 6, 2018).

19.     Plaintiffs and Members of the Classes purchased and used Intel's CPUs. Intel's scheme has caused Plaintiffs and Members of the Classes to lose money and property by being overcharged for and paying for the defective CPUs at issue, and/or being required to purchase an additional working CPU. These losses occurred at the point of sale and continued thereafter and were the direct result of Intel's misconduct, including the deceptive and unfair acts asserted herein.

## V.     TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

20.     **Discovery Rule Tolling.**  Neither Plaintiffs nor Members of the Classes could have discovered through the exercise of reasonable diligence that their CPUs suffered from a critical security flaw within the time period of any applicable statutes of limitation.

21.     **Fraudulent Concealment Tolling.**  Throughout the relevant time period, Intel concealed from and failed to disclose to Plaintiffs and Members of the Classes vital information concerning the security flaw described herein. Intel knew or otherwise should have known of the security flaw well before its discovery by a third-party.

22.     Intel kept Plaintiffs and other Members of the Classes ignorant of information essential to the pursuit of their claims. As a result, neither Plaintiffs nor the other Members of the Classes could have discovered the security flaw, even upon reasonable exercise of diligence.

23.     Despite its knowledge of the security flaw (and the need to develop a patch that significantly degrades performance), Intel failed to disclose and concealed, and continues to conceal, this critical information from Plaintiffs and other Members of the Classes, even though it could have done so through individual correspondence, media release, or by other means, at any time.

24.     Plaintiffs and the other Members of the Classes justifiably relied on Intel to disclose the security defect in the CPUs that they purchased or leased because that defect was hidden and not discoverable through reasonable efforts by Plaintiffs and the other Members of the Classes.

25. Thus, the running of the applicable statutes of limitations has been suspended with respect to any claims that Plaintiffs and other Members of the Classes have sustained as a result of the security defect by virtue of the fraudulent concealment doctrine.

26. **Estoppel.** Intel was under a continuing duty to disclose to Plaintiffs and other Members of the Classes the true character, quality, and nature of the defective CPUs, but concealed the true nature, quality, and character of the defective CPUs.

27. Based on the foregoing, Intel is estopped from relying on any statutes of limitations in defense of this action.

## VI.   CLASS ALLEGATIONS

28. Plaintiffs George West and WestMed, individually, and for the Classes defined herein, incorporate by reference all preceding paragraphs as though fully set forth herein.

29. Plaintiffs bring this case individually, and as a class action pursuant to FED. R. CIV. P. 23, on behalf of all Alabama consumers and businesses that have incurred economic, monetary, or statutory damages as a result of Intel's sale and distribution of defective CPUs.

30. Plaintiff George West seeks to represent the following Class:

**Alabama Consumer Class**
All persons in Alabama who purchased one or more Intel CPUs either from Intel or its authorized retail sellers.

31. Plaintiff WestMed seeks to represent the following Class:

**Alabama Business Class**
All businesses in Alabama that purchased one or more Intel CPUs either from Intel or its authorized retail sellers.

Excluded from these Classes are the following:

a. Any and all federal, state, or local governments, including but not limited to their department, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

b. individuals, if any, who timely opt out of this proceeding using the correct protocol for opting out;

c. current or former Intel employees;

d. individuals, if any, who have previously settled or compromised claim(s); and

e. any currently sitting federal judge and/or person within the third degree of consanguinity to any federal judge.

32. Plaintiff George West seeks to recover damages on a Class-wide basis for himself and the Alabama Consumer Class Members.

33. Plaintiff WestMed seeks to recover damages on a Class-wide basis for itself and the Alabama Business Class Members.

34. Plaintiffs may properly maintain this action as a class action for the following reasons:

35. **Numerosity:** Members of the Classes are so numerous that individual joinder is impracticable. The proposed Classes contain hundreds if not thousands of members. The Classes are therefore sufficiently numerous to make joinder impracticable, if not impossible.

36. **Common Questions of Fact and Law Exist:** Common questions of fact and law exist as to all Members of the Classes, including whether Intel CPUs have the security defect discussed herein and the nature of the defect; whether Intel made any implied warranties in connection with the sale of the defective CPUs; whether Intel breached any implied warranties relating to its sale of defective CPUs by failing to resolve the security defect in the manner required by law; whether Intel violated applicable consumer protection laws by selling CPUs with the security defect, by failing to disclose the defect, and failing to provide the relief required by law; and the appropriate nature and measure of Class-wide relief.

37. **Typicality**: Plaintiffs' claims are typical of the claims of Members of the Classes. The injuries sustained by Plaintiffs and the Classes flow, in each instance, from a common

nucleus of operative facts based on Intel's uniform conduct as set forth above. The defenses, if any, that will be asserted against Plaintiffs' claims will be similar to the defenses that will be asserted, if any, against the claims of Members of the Classes.

38. **Adequacy:** Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Classes—all seek redress for the same unlawful conduct by Intel. Plaintiffs' retained Counsel are competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their Counsel. Plaintiffs' claims, like those of the Classes, are antagonistic to Defendant.

39. **Predominance**: Common questions of fact and law predominate over any questions affecting individual Members of the Classes.

40. **Superiority**: A class action is superior to other available means of fair and efficient adjudication. The injury suffered by each individual Member of the Classes is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Moreover, individual joinder of all Members of the Classes is impracticable, if not impossible, because many Members of the Classes are located throughout the United States. It would be virtually impossible for all Members of the Classes to effectively redress these wrongs on an individual basis. Therefore, a class action is the only reasonable means by which Plaintiffs and the Classes may pursue their claims. Moreover, even if the Members of the Classes could afford such individual litigation, the court system could not. Individualized litigation of complex legal and factual issues of this case increases the delay and expense to all parties, and to the court system. By contrast, a class action alleviates

management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### VII.    CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**Breach of Implied Warranty**
**(All Classes)**

41.    Plaintiffs individually, and for the Classes, incorporate by reference all preceding paragraphs as though fully set forth herein.

42.    Intel and its authorized agents and resellers sold Intel CPUs to Plaintiffs and Members of the Classes in the regular course of business.

43.    Intel impliedly warranted to members of the general public, including Plaintiffs and Members of the Classes, that its CPUs were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it is made, of average worth in the marketplace, or not broken, unworkable, damaged, contaminated, or flawed), were of the same quality as those generally acceptable in the trade or that would pass without objection in the trade, were free from material defects, and were reasonably fit for the ordinary purposes for which they were intended or used. In addition, Intel either was or should have been aware of the particular purposes for which such CPUs are used, and that Plaintiffs and the Members of the Classes were relying on Intel's skill and judgment to furnish suitable goods for such purpose.

44.    Pursuant to agreements between Intel and its authorized agents and resellers, the stores from which Plaintiffs and Members of the Classes purchased their defective Intel CPUs are authorized retailers. Plaintiffs and Members of the Classes are third-party beneficiaries of, and substantially benefitted from, such contracts.

45.    Intel breached its implied warranties by selling Plaintiffs and Members of the Classes defective CPUs. The defect renders the Intel CPUs unmerchantable and unfit for their

ordinary purpose or use. Intel has refused to recall, repair, or replace, free of charge, its CPUs or any of their defective component parts or refund the prices paid for such CPUs.

46. The defect in the Intel CPUs existed when the CPUs left Intel's and its authorized agents' and retail sellers' possession and, thus, is inherent in such CPUs.

47. As a direct and proximate result of Intel's breach of its implied warranties, Plaintiffs and Members of the Classes have suffered damages and continue to suffer damages, including economic damages at the point of sale in terms of the difference between the value of the CPUs as warranted and the value of the CPUs as delivered. Additionally, Plaintiffs and Members of the Classes have incurred, or will incur, economic, incidental, and consequential damages, including the cost of repair or replacement, costs of complying with continued contractual obligations, and the cost of buying an additional CPU they would not have purchased had the Intel CPUs not contained the defect.

48. Plaintiffs and Members of the Classes are entitled to legal and equitable relief against Intel, including damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## SECOND CAUSE OF ACTION
**Violations of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et seq.***
**(Alabama Consumer Class)**

49. Plaintiff George West, individually and for the Alabama Consumer Class Members, hereby incorporate each and every allegation as though fully set forth herein.

50. Intel's manufacture, sale, and distribution of defective CPUs, and Plaintiff's and Alabama Consumer Class Members' purchase of the defective CPUs, constitutes a sale or distribution of goods to a consumer within the meaning of the Alabama Deceptive Trade Practices Act.

51.     Plaintiff and Alabama Consumer Class Members purchased Intel's defective CPUs for personal, family, or household use.

52.     As described above, Intel knowingly committed the following unlawful and deceptive acts or practices in the conduct of trade or commerce:

   a.   Represented that Intel CPUs have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have;

   b.   represented that Intel CPUs are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

   c.   engaged in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

53.     By performing these unlawful acts, Intel caused monetary damage to Plaintiff and Alabama Consumer Class Members.

54.     Plaintiff, individually, and on behalf of Alabama Consumer Class Members, requests the following relief:

   a.   Any actual damages sustained by Plaintiff and Alabama Consumer Class Members, or the sum of $100, whichever is greater;

   b.   three times actual damages;

   c.   appropriate injunctive relief;

   d.   attorneys' fees and costs; and

   e.   such other and further relief as the court deems proper.

## VIII.   PRAYER FOR RELIEF

Plaintiffs individually, and on behalf of the Classes identified herein, seek the following relief:

   A.   An order certifying an Alabama Consumer Class, and appointing Plaintiff George West and his Counsel to represent the Class;

B. An order certifying an Alabama Business Class, and appointing Plaintiff WestMed and its Counsel to represent the Class;

C. An order awarding Plaintiffs and the Classes all lawful damages, including compensatory, consequential, statutory, and treble damages, as to the appropriate causes of action;

D. An order enjoining Intel from continuing to engage in business acts and practices that are unlawful, unfair, deceptive, or contrary to its agreements and warranties, as alleged herein;

E. An order awarding Plaintiffs and the Classes pre-judgment and post-judgment interest, as well as reasonable attorneys' fees and expert witness fees and other costs as may be applicable; and

F. An order awarding such other and further relief as this Court may deem just and proper.

## IX.    JURY DEMAND

Plaintiffs demand a trial of all claims by a struck jury.

Respectfully submitted this 6th day of March 2018.

>  */s/ Ryan Lutz*
> Hirlye R. "Ryan" Lutz, III
> ASB-6641-E59L
> F. Jerome Tapley
> ASB-0583-A56T
> Douglas A. Dellaccio
> ASB-4578-L75D
> Adam W. Pittman
> ASB-0146-A33P
> Brett C. Thompson
> ASB-6700-R81T
> **CORY WATSON, P.C.**
> 2131 Magnolia Avenue South
> Birmingham, Alabama 35205
> Telephone: (205) 328-2200
> Facsimile:  (205) 324-7896

rlutz@corywatson.com
jtapley@corywatson.com
ddellaccio@corywatson.com
apittman@corywatson.com
bthompson@corywatson.com

W. Daniel "Dee" Miles, III
ASB-7656-M75W
Leslie Pescia
ASB-0224-U14E
**BEASLEY ALLEN CROW METHVIN PORTIS & MILES, P.C.**
218 Commerce Street
Montgomery, Alabama 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
Dee.Miles@beasleyallen.com
Leslie.Pescia@beasleyallen.com

Chris T. Hellums
ASB-5583-L73C
Jonathan S. Mann
ASB-5583-L73C
**PITTMAN DUTTON & HELLUMS, P.C.**
2001 Park Place North, Suite 1100
Birmingham, Alabama 35203
Telephone: (205) 322-8880
Facsimile: (205) 328-2711
chrish@pittmandutton.com
jonm@pittmandutton.com